UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL WJ HAWN,

                    Plaintiff,

        v.

CLALLAM COUNTY JAIL, et al.,

                    Defendants.

Case No. 3:24-cv-05310-TL-TLF

REPORT AND RECOMMENDATION

NOTED FOR MAY 23, 2025

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge Theresa L. Fricke. Plaintiff Daniel Hawn, unrepresented by counsel, initiated this civil rights action. Pending before the Court is a Motion for Summary Judgment filed by Defendants Clallam County Jail, Sheriff Brian King, Clallam County Medical, Sergeant Morgan, Sergeant McCann, and Kimberly Yackan (collectively, "Defendants") *See* Dkt. 26. Plaintiff did not respond to Defendants' motion for summary judgment.

Plaintiff brings the following claims against Defendants in his complaint: (1) First Amendment claim against Defendants Sergeants Morgan and McCann for opening his outgoing legal mail; (2) Eighth Amendment claim against Defendant Kimberly Yackan and Clallam County Medical for inadequate medical care; (3) Fourteenth Amendment claim against Defendants Sergeants Morgan and McCann for failing to accommodate his food allergies and providing inadequate meals; and (4) Fourteenth Amendment

1  claim against Clallam County Jail for opening his legal mail, providing him with an

2  improper meals, and ignoring his complaints of illness. Dkt. 4 (Complaint).

3          The Court would have considered as evidence Plaintiff's contentions in his

4  Complaint if he had attested under penalty of perjury that the contents of his pleadings

5  were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Because

6  Plaintiff's Complaint was not signed under oath or penalty of perjury, the Court cannot

7  consider Plaintiff's Complaint as evidence against Defendants' summary judgment

8  motion. Thus, Plaintiff's evidence consists of his testimony at his deposition on

9  November 18, 2024. Dkt. 27, Declaration of Sarah Tatistcheff, Exhibit A.

10          For the reasons below, the Court recommends Defendants' motion for summary

11  judgment should be granted in part and denied in part. Plaintiff's claims against Sheriff

12  King, Fourteenth Amendment claims for inadequate medical care against the individual

13  defendants, First Amendment claim against Defendant Morgan, and all claims against

14  Clallam County, should be dismissed with prejudice. Defendant McCann's summary

15  judgment motion on Plaintiff's First Amendment claim should be denied.

16                              **<u>FACTUAL ALLEGATIONS</u>**

17          At the time of the incidents alleged in his complaint, Plaintiff was a pretrial

18  detainee at Clallam County Correctional Facility[1]. Dkt. 4 at 2.

19      **A.  Plaintiff's Legal Mail**

20          Plaintiff alleges Sergeant McCann opened his outgoing legal mail to his defense

21  attorney's paralegal. Dkt. 27, Declaration of Sarah Tatistcheff, Exhibit A, at 20:10-21:12.

22

23  _____

    [1] Plaintiff is currently a Monroe Correctional Complex. Dkt. 28. Plaintiff has not submitted a notice of
24  change of address.

25

He claims the envelope was sealed stamped as legal mail and the documents enclosed were legal in nature. Dkt. 27, Tatistcheff Decl., Exh. A, at 23:6-9.

He testified the letter he wanted to mail to this paralegal related to an upcoming evidentiary hearing. *Id.* He later received the letter back with the envelope opened and with a note stating that this was not legal mail. *Id.*

When Plaintiff asked Sergeant McCann why his mail was opened, Sergeant McCann allegedly told Plaintiff that he was allowed to open and read Plaintiff's legal mail to search for contraband. *Id.* at 21:8-9. Plaintiff testified during his deposition that he informed his criminal defense attorney about this incident, but to his knowledge, this issue was never raised in court or with jail staff. Dkt. 27, Exhibit A at 24:11-17. Plaintiff testified this was the only issue he experienced relating to his outgoing legal mail. *Id.* at 24:18-20; 25:20-22.

During his deposition, he testified Sergeant Morgan informed him that the incident regarding his outgoing mail was "not a grievable issue" and threatened to put him in "IMU." Dkt. 27, Exhibit A at 26:1-9.

Jail records indicate one time that Sergeant McCann incorrectly opened Plaintiff's incoming legal mail. *See* Dkt. 27, at Exhibit D. Sergeant McCann emailed Chief Deputy Wenzl on May 10, 2024, informing him Plaintiff received a letter that had no stamps or words on the envelope indicating that it was legal mail, and the return address was not from a legal office. *Id.* at 1. Sergeant McCann acknowledged that he opened the letter, but once it was found to be legal mail, he gave it to Plaintiff and explained that he had opened it because there was nothing on the envelope stating it was legal mail. *Id.* Sergeant McCann did not write a report following the incident. *Id.*

1

2    **B. Plaintiff's Food Allergies**

3        Plaintiff alleges he discussed his food allergies with Sergeant McCann and

4    Sergeant Morgan several times and submitted multiple kites, but Defendants were

5    unconcerned. Plaintiff testified that he is allergic to eggs, and after informing the jail of

6    this one month after his incarceration, the jail staff continued to put mayonnaise on his

7    food and gave him eggs. Dkt. 27, Tatistcheff Decl., Exhibit A at 29:23-25. *See also,*
     Exhibit E at 3.

8        Plaintiff also testified when he received food he knew to have eggs in it, he

9    informed jail staff and his meals were replaced. Dkt. 27, Exhibit A, at 34:1-11; 37:23-

10   38:3. Exhibit E at 5, 6, 7. When he informed Sergeant McCann about his meals having

11   eggs on a few occasions, Plaintiff testified Sergeant McCann stated, "Hey, the main

12   cook that handles the diets wasn't there. I'll talk to him as soon as he gets back." Dkt.

13   27, Exhibit A at 34: 16-21. When Plaintiff reminded Sergeant McCann that the issue

14   persisted, Sergeant McCann stated, "Oh, I forgot. I'll go deal – I'll go talk to him." *Id.* at

15   34:22-2. The jail attempted to eliminate eggs from his diet and his food eventually

16   started to arrive to his cell on a special tray with a "no eggs" or "no eggs/mayo" sticker

17   on it. Dkt. 27, Exhibit A, at 31:23-32:7.

18       Plaintiff filed a grievance on April 24, 2024, expressing his concern that he is not

19   receiving enough protein with the egg replacements the kitchen was providing him. The

20   grievance coordinator informed Plaintiff that their menu is evaluated annually by a

21   Registered Nurse and the jail will ensure Plaintiff is receiving a sufficient substitution for

22   the eggs to ensure his meals contain enough protein and calories. Dkt. 27, Exhibit E at

23   9.

24

25

REPORT AND RECOMMENDATION - 4

1

### C. Plaintiff's Medical Treatment

2    Finally, Plaintiff alleges he received inadequate medical care at the jail. Plaintiff

3    suffers from Crohn's disease, anxiety, depression, post-traumatic stress disorder

4    (PTSD), methicillin-resistant Staphylococcus aureus (MRSA), Cellulitis, Hepatitis C, and

5    herpes. Dkt. 27, Tatistcheff Decl., Exhibit A, at 39:23-24, 40:21-41:2, 41:15-18, 42:3-8,

6    42:14-15, 43:17. He claims he began experiencing abdominal pain and headaches after

7    starting a new medication, Sublocade; upon informing jail nurse, Defendant Yackan, of

8    his symptoms, she told Plaintiff to stay on the medication for a few more months. *Id.*

9    50:18-21. Plaintiff also alleges that he learned later that Sublocade was "bad…on your

10   liver" and was never informed of this despite his Hepatitis C diagnosis. Dkt. 27, Exhibit

11   A at 52:25-53:9. Jail medical staff assured him, based on the blood testing they had

12   done, that his liver was not compromised. *Id.* at 53:10-12.

13   Plaintiff raised a Prison Rape Elimination Act (PREA) incident in his complaint,

14   but did not allege facts about this incident until his deposition. During his incarceration

15   at the jail, Plaintiff experienced a herpes outbreak and informed Defendant Yackan. Dkt.

16   27, Exhibit A at 43:17-19. Defendant Yackan allegedly asked Plaintiff to show her where

17   the outbreak was while he was in line with other inmates around and he objected to

18   showing her the area in a public setting. *Id.* at 43:20-44:7.

19   ### DISCUSSION

20   ### A. Legal Standards

21   a. Summary Judgment

22   Summary judgment is appropriate when the "movant shows that there is no

23   genuine dispute as to any material fact and the movant is entitled to judgment as a

24

25

matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does not bear the burden at trial, they can carry their initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy their burden at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party bears the burden at trial, they can meet their initial burden by presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party; the evidence presented must establish beyond controversy every essential element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888–89 (9th Cir. 2003).

If the moving party meets their initial burden, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252. Likewise, the nonmoving party cannot

1    "defeat summary judgment with allegations in the complaint, or with unsupported

2    conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d

3    1107, 1112 (9th Cir. 2003).

4           Allegations based merely on the plaintiff's belief are insufficient to oppose

5    summary judgment, as are unsupported conjecture and conclusory statements. *Id.*;

6    *McElyea v. Babbitt*, 833 F.2d 196, 197–98 n.1 (9th Cir. 1987). In ruling on a motion for

7    summary judgment, the court must draw all reasonable inferences in favor of the

8    nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the

9    evidence or make credibility determinations, *Anderson*, 477 U.S. at 248. As discussed

10   above, because Plaintiff did not respond to the summary judgment motion or submit any

11   pleadings under penalty of perjury, the Court cannot consider the allegations in

12   Plaintiff's Complaint as evidence.

13   **B.  Plaintiff's Section 1983 Claims**

14          To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the

15   conduct complained of was committed by a person acting under color of state law, and

16   (b) the conduct deprived a person of a right, privilege, or immunity secured by the

17   Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535

18   (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986).

19          **a.  Plaintiff's Fourteenth Amendment Claims against Defendants
20                 Yackan, McCann, and Morgan**

21          Plaintiff claims Defendants violated his Fourteenth Amendment right to medical

22   care as a pretrial detainee when: (1) Nurse Kimberly Yackan requested that he discuss

23   a medical condition in the presence of others, (2) Nurse Yackan did not permit Plaintiff

24   to stop taking Sublocade after he began experiencing abdominal pain and headaches

25

1   and (3) his meals were insufficient because Sergeants McCann and Morgan did not

2   sufficiently consider the complaints he made about his food allergies.

3        The Due Process Clause of the Fourteenth Amendment prohibits the government

4   from punishing pretrial detainees "prior to an adjudication of guilt in accordance with the

5   due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Plaintiff asserts that

6   Defendants violated the Fourteenth Amendment and Eighth Amendment by providing

7   inadequate medical care. Dkt. 11 at 4.

8        Both the Fourteenth and Eight Amendment provide a minimum standard of care

9   for determining the rights of a pretrial detainee to medical treatment. *Gordon v. Cnty. of*

10  *Orange*, 888 F.3d 1118, 1122 (9th Cir. 2018). Inadequate medical care claims are

11  treated as claims challenging a pretrial detainee's "conditions of confinement" and are

12  judged under an "objective deliberate indifference standard." *Id.* at 1125. Because

13  Plaintiff was a pretrial detainee at the time of these events, his claims for inadequate

14  medical care do not arise under the Eighth Amendment as alleged in his complaint –

15  they arise under the Fourteenth Amendment only. *See Castro v. Cty. of L.A.*, 833 F.3d

16  1060, 1067–68 (9th Cir. 2016).

17       When bringing a claim against an individual defendant under the Due Process

18  Clause of the Fourteenth Amendment for unconstitutional medical care in a jail, a

19  plaintiff must show: "(i) the defendant made an intentional decision with respect to the

20  conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at

21  substantial risk of suffering serious harm; (iii) the defendant did not take reasonable

22  available measures to abate that risk, even though a reasonable official in the

23  circumstances would have appreciated the high degree of risk involved—making the

24

25

1   consequences of the defendant's conduct obvious; and (iv) by not taking such

2   measures, the defendant caused the plaintiff's injuries." *Gordon*, 888 F.3d at 1125.

3          The "mere lack of due care" by an official does not violate the Fourteenth

4   Amendment; the plaintiff must prove "more than negligence but less than subjective

5   intent—something akin to reckless disregard." *Id*. (quoting *Daniels*, 474 U.S. at 330-31).

6   Thus, while a plaintiff need not show that a prison official intended to harm them, they

7   must show that the official "knew of and disregard[ed]" the substantial risk of harm to

8   plaintiff's health. *Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019) (quoting *Lemire v.*

9   *Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (alterations in

10  original)).

11         To survive Defendants' motion for summary judgment, Plaintiff must establish a

12  genuine issue of material fact as to the existence of the *Gordon* elements—against

13  Defendants Yackan, McCann, and Morgan —in his case.

14         Plaintiff must present evidence beyond his own conclusory allegations and must

15  show how each defendant personally participated in the alleged wrongdoing. He must

16  present evidence that Ms. Yackan's request to discuss his medical condition in the

17  presence of others put him at substantial risk of suffering serious harm *and* that she

18  knew and disregarded this risk.

19         Further, if Plaintiff is attempting to state a claim under PREA based on Ms.

20  Yackan's conduct, he cannot do so. PREA was enacted to study the problem of prison

21  rape and to authorize the reporting of incidents of rape but nothing in the Act creates a

22  private right of action enforceable under § 1983. *See Law v. Whitson*, 2:08–CV–0291–

23

24

25

REPORT AND RECOMMENDATION - 9

SPK, 2009 WL 5029564, *4 (E.D. Cal. Dec. 15, 2009); *Trost v. Cox*, 3:14–CV–611–MMD–WGC, ECF No. 3, *9 (D. Nev. April 10, 2015).

Plaintiff must present reliable evidence to support his lay opinion that the Sublocade harmed him or was medically inappropriate, and that Nurse Yackan's consultation with Plaintiff after he complained of the problems he had with Sublocade was a substantial risk to Plaintiff's health. *See Taylor v. List*, 880 F.2d 1040, 1045-46 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."); *see also Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1032 (10th Cir. 2020) (affirming dismissal of inadequate medical treatment claim when plaintiff, a pretrial detainee, did not exhibit any symptoms of illness or medical emergency related to heroin withdrawal). There is no genuine dispute of material facts that Defendant Yackan's actions put Plaintiff at substantial risk of suffering serious harm.

As for his dietary allergy, the Court finds no genuine dispute of material facts to show Defendants were deliberately indifferent to his food allergy. After Plaintiff informed Defendants of his egg allergy, the jail attempted to eliminate eggs from his meals and provide replacements that meet his nutritional needs. Although there were times when he was provided eggs in his meals, Plaintiff has not produced evidence showing that this was more than negligence on the part of Defendants; he has made no showing that his health deteriorated as a result of the meals he was provided.

Plaintiff acknowledged that the Jail replaced mayonnaise with mustard, stopped putting dressing on his salads, and gave him peanut butter and cheese instead of hardboiled eggs. Dkt. 27, Tatistcheff Decl., Exhibit A at 36:4-37:4.

REPORT AND RECOMMENDATION - 10

Plaintiff's claims against Defendants Yackan, McCann, and Morgan allege at most, negligence, or a difference in medical opinion, which does not establish a constitutional violation. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *Thompson v. Worch*, 6 F. App'x 614, 616 (9th Cir. 2001); *Anchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Thus, Defendants motion for summary judgment on Plaintiff's Fourteenth Amendment claims should be GRANTED.

### b. Plaintiff's First Amendment Claim against Sergeants McCann and Morgan

"[P]risoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017). The purpose of having prison officials open legal mail in an inmate's presence is to prevent attorney-client communications from being chilled. *See Nordstorm v. Ryan,* 762 F.3d 903, 911 (9th Cir. 2014) ("The harm [the plaintiff] alleges is not that tainted evidence was used against him but that his right to privately confer with counsel has been chilled. This is a plausible consequence of the intentional reading of his confidential legal mail.").

An inmate's right to communicate with his or her attorney on a confidential basis implicates both the Sixth Amendment right to counsel and the First Amendment right to communicate, and as such, prison officials may inspect, but not read, an inmate's outgoing legal mail. *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017). While allegations of the improper opening of two pieces of a prisoner's legal mail may be sufficient to state a First Amendment claim, *see Hayes,* 849 F.3d at 1208, 1212-13, a Section 1983 action based on a single incident of the improper opening of legal mail can

only be maintained based on allegations that prison staff acted deliberately or intentionally. *See Sims v. Correctional Officer Palacios*, Case No. 2:23-cv-01310-VBF-PD, 2024 WL 4744016, at *2 (C.D. Cal. Jan. 9, 2024) ("[T]he negligent opening of a prisoner's legal mail outside the inmate's presence does not rise to the level of a constitutional violation and, therefore, does not violate § 1983."; and "A plaintiff must show that the opening of 'legal mail' was due to more than negligence to state a constitutional violation.") (citations omitted); *Suber v. Snohmish Cnty. Jail Mail Room*, Case No. C18-428 RAJ-BAT, 2018 WL 7107608, at *2 (W.D. Wash. Oct. 29, 2018) (finding the plaintiff's allegation that one time he received legal mail could not state a claim that his legal mail was opened intentionally).

Plaintiff contends Defendants McCann and Morgan violated his First Amendment right when Defendant McCann opened Plaintiff's outgoing legal mail to his defense attorney's paralegal outside of his presence. He states the mail to the paralegal contained information about his evidentiary hearing, and the envelope was sealed and stamped as "legal mail". Plaintiff testified that Sergeant McCann intentionally opened the mail, read it, and returned it to him after determining that the mail was not legal in nature.

First, Plaintiff must show each Defendant personally participated in this alleged violation. While Plaintiff has pled sufficient facts to establish personal participation on the part of Defendant McCann, he has not done so with respect to Defendant Morgan. Plaintiff did not plead that Defendant Morgan opened his legal mail, read it or returned it to Plaintiff opened. Plaintiff states Defendant Morgan informed him that the issue was not "grievable" and threatened to put Plaintiff in the IMU, but he alleges no other facts

against Defendant Morgan to explain how this violated his First Amendment right to have his properly marked legal mail opened only in his presence.

To the extent Plaintiff alleges it was Defendant Morgan's threat of putting him in the IMU that violated his First Amendment right to seek redress of grievances, Plaintiff has alleged nothing more than speculation that Defendant Morgan acted out of retaliation. *See Juarez v. Butts*, No. 20-17467, 2022 WL 16756354, at *2 (9th Cir. Nov. 8, 2022) (affirming the district court's grant of summary judgment in the defendants' favor and explaining that the plaintiff's First Amendment retaliation claim failed on its merits because the plaintiff "offer[ed] only his bare speculation that any [d]efendant's actions were substantially driven by a desire to retaliate against [him] for his protected speech," and "there [was] 'no factual basis' upon which a factfinder could determine [the defendants] had acted with retaliatory motives").

Therefore, Plaintiff's First Amendment claim against Defendant Morgan should be dismissed.

Turning to the allegations against Defendant McCann, although prison officials may inspect mail for contraband, they may not read it. *Nordstrom v. Ryan*, 856 F.3d 1265,1272 (9th Cir. 2017). [T]he absence of a clear pattern beyond [a couple of] incidents does not preclude relief" because "even isolated incidents of improper mail opening may, in appropriate circumstances, be sufficient to allege a [constitutional] violation." *Mangiaracina v. Penzone*, 849 F.3d 1191, 1197 (9th Cir. 2017). *See also Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (Prison officials may justifiably censor outgoing mail concerning escape plans, containing information about proposed criminal activity, or transmitting encoded messages); *Witherow v. Paff*, 52 F.3d 264, 265 (9th

Cir. 1995) (per curiam) (Prison officials may visually inspect outgoing mail to determine whether it contains contraband material that threatens prison security or material threatening the safety of the recipient.).

Defendants, through a declaration from Sergeant McCann or otherwise, do not explain why Plaintiff's mail to his lawyer's paralegal was not considered legal mail. If it was Plaintiff's legal mail, then Defendant McCann decision to read the mail would have been a possible First Amendment violation. The facts allow a reasonable inference that Plaintiff's legal mail was opened intentionally.

As noted above, "a plaintiff need not allege a longstanding practice of violating his First Amendment rights" regarding a legal mail claim. *Hayes*, 849 F.3d at 1212. The fact that Plaintiff states his mail was related to his upcoming evidentiary hearing, documented as legal mail, returned to him opened, creates a genuine dispute over whether Defendant McCann opened the mailing deliberately. *See Nordstrom*, 856 F.3d at 1271–74 (explaining that "prison officials may inspect, but may not read, an inmate's outgoing legal mail in his presence.").

Plaintiff's mail to the Courts, however, is not considered "legal mail," and can be opened outside of his presence. *Keenan v. Hall,* 83 F.3d 1083, 1094 (9th Cir. 1996), *opinion amended on denial of reh'g,* 135 F.3d 1318 (9th Cir. 1998). *See also O'Keefe v. Van Boening,* 82 F.3d 322, 326 (9th Cir. 1996) (a prison need not treat all mail sent to and from government agencies and officials as legal mail).

Defendants refer to a completely different incident regarding Plaintiff's incoming mail and appear to justify opening Plaintiff's mail given Plaintiff's history of attempting to contact his wife despite a no-contact order being in place. Dkt. 27, Tatistcheff Decl.,

REPORT AND RECOMMENDATION - 14

Exhibits B, C. *See also* Exhibit A at 62:1-5. But this is a different incident than the one Plaintiff refers to in his complaint and his deposition.

Taking all the facts in the light most favorable to Plaintiff, Plaintiff has shown the existence of genuine issues for trial from which a jury could reasonably render a verdict in his favor on his legal mail claim. Thus, Defendant McCann should not be entitled to summary judgment on Plaintiff's legal mail claim.

**C. Plaintiff's Claims Against Clallam County Jail and Clallam County Medical**

In his remaining claim, Plaintiff contends Clallam County Jail and Clallam County Medical violated Plaintiff's Fourteenth Amendment rights by opening his legal mail, denying him "fair, safe treatment, denying him "remedies to correct their behavior," "threatening retaliation," lying to him, and providing him improper meals. Dkt. 4 at 9-10. The Jail and medical department, however, are not proper defendants in a Section 1983 action. 42 U.S.C. § 1983 applies to the actions of "persons" acting under color of state law. This definition includes municipalities, such as counties. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). To bring an appropriate § 1983 action, a plaintiff "must name the county or city itself as party to the action, and not the particular municipal department or facility where the alleged violation occurred." *Osborne v. Vancouver Police*, 2017 WL 1294573, at *9 (W.D. Wash. 2017); *see also Vance v. Santa Clara Co.*, 928 F. Supp. 993, 996 (N.D. Cal. 1996); *Pressley v. San Diego Sheriff Central County Jail*, 2017 WL 4960221, at *3 (S.D. Cal. 2017); *Greenfield v. Brenner*, 2006 WL 776772, at *5 (E.D. Wash. 2006). In this case, Clallam County is the proper defendant. Construing Plaintiff's pleadings liberally, the Court will analyze his

claims against Clallam County Jail and Clallam County Medical to be against the County.

A county may only be held liable if its policies are the "moving force [behind] the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Monell*, 436 U.S. at 694). To recover, a plaintiff must show county employees or agents acted through an official custom or policy that permits violation of plaintiff's civil rights, or the entity ratified the unlawful conduct. *See Monell*, 436 U.S. at 690-91.

Plaintiff does not identify a Clallam County policy, custom, or practice that was responsible for his allegations. To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Plaintiff did not file a response to Defendants' motion for summary judgment, and did not direct the Court to any other evidence in his deposition testimony supporting a finding that Clallam County had an official municipal policy or custom of violating constitutional rights or that such policy caused the violation of Plaintiff's constitutional rights; therefore, the Court should find that Plaintiff has not met his burden to show a genuine issue for trial on the County's liability for its policies.

Defendants' motion for summary judgment on Plaintiff's claim against Clallam County should be granted.

**D.  Defendant King**

Finally, Defendant King is entitled to summary judgment because there is no evidence that he personally participated in the deprivation of Plaintiff's constitutional rights. Plaintiff names Defendant King as party in his Complaint but makes no allegations against him in the Complaint or his deposition testimony. A prerequisite to

REPORT AND RECOMMENDATION - 16

recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Therefore, liability under § 1983 arises *only* upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (emphasis added)

Because Plaintiff has stated no facts and claims against Defendant King, the Court should grant Defendant King's motion for summary judgment and dismiss Defendant King as a party from the case.

**E. Qualified Immunity**

Government officials are entitled to qualified immunity in suits against them for an alleged violation of a constitutional right unless a plaintiff makes a two-part showing. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The plaintiff must show that officials violated a constitutional right *and* that this right was "clearly established." *Id*. A court may consider the two prongs in whatever order it chooses. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts.  *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact related to both: (1) Whether the defendant's conduct violated a constitutional right and (2) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

As discussed above, viewed in light most favorable to the Plaintiff, the facts do not show that the Defendants Morgan, Yackan, King, and McCann (with respect to Plaintiff's Fourteenth Amendment claim only) violated Plaintiff's Constitutional rights. Accordingly, Defendants Morgan, Yackan, and King should be entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied. Defendant McCann should be entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim against him.

If the Court finds Defendant McCann's motion for summary judgment on Plaintiff's First Amendment claim should be denied, then the Court must determine whether the constitutional right was clearly established in light of the specific context of the case. *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Whether an official is entitled to qualified immunity "generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (simplified).

"For a right to be 'clearly established,' existing 'precedent must have placed the statutory or constitutional question *beyond debate*,' such that 'every' reasonable official, not just 'a' reasonable official, would have understood that he was violating a clearly established right." *Thompson v. Rahr*, 885 F.3d 582, 587 (9th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (emphasis in original).

Defendants acknowledge the applicable standards for qualified immunity, but they cite no authority to support their claim for qualified immunity and simply argue that

1    "Plaintiff will be unable to establish that any of the Defendants should have known that

2    their conduct violated a clearly established constitutional right." Dkt. 26 at 15.

3         As discussed, Defendants mischaracterize Plaintiff's First Amendment claim and

4    did not sufficiently address the incident of Plaintiff's outgoing legal mail to the paralegal.

5    Defendants, rather, assume Plaintiff's claim is the same claim Defendant McCann

6    documented in an email to Chief Deputy Wenzl conceding that he opened Plaintiff's

7    incoming mail. The question is whether Plaintiff has a clearly established right under the

8    First Amendment to send legal mail free from an inspection that involves a prison official

9    reading the letter. Because Defendant McCann does not address that question, and

10   because he argues for qualified immunity based on a misinterpretation of Plaintiff's

11   claim, Defendant McCann has not shown he is entitled to judgment as a matter of law

12   based on qualified immunity. *See Evans v. Gower*, No. 2:17-CV-01162-MK, 2022 WL

13   3226968, at *9 (D. Or. Aug. 10, 2022) (denying the defendants' motion for summary

14   judgment on the basis of qualified immunity because, [a]fter *Hayes* [*v. Idaho*, 849 F.3d

15   1204, 1211 (9th Cir. 2017)], "every reasonable official would have understood they were

16   violating a clearly established right by opening Plaintiff's legal mail outside of his

17   presence.").

18        If a jury finds that the mail was not legal in nature, was not properly marked, or

19   that Defendant McCann did not open the legal mail, then his conduct would not violate

20   clearly established law. Yet if a jury finds that the mail was legal, was properly marked

21   and Defendant McCann did open and read (as opposed to only inspect) the legal mail

22   outside of Plaintiff's presence, then his conduct likely violated Plaintiff's clearly

23

24

25

REPORT AND RECOMMENDATION - 19

1  established First Amendment right. *See Hayes,* 849 F.3d at 1210. Qualified immunity

2  may not be resolved at summary judgment on these facts.

3                                      **CONCLUSION**

4         For all these reasons, the undersigned recommends that Defendants' motion for

5  summary judgment (Dkt. 26) should be GRANTED in part and DENIED in part. The

6  motion should be GRANTED as to Plaintiff's Fourteenth Amendment claims related to

7  inadequate medical care against Defendants Yackan, Morgan, and McCann, Plaintiff's

8  First Amendment claim against Defendant Morgan, Plaintiff's *Monell* claims against the

9  County, the Medical Department, and the Jail, and Plaintiff's claims against Defendant

10 King. The undersigned recommends that the motion should be DENIED as to Plaintiff's

11 First Amendment claim against Defendant McCann, and Defendant McCann should not

12 be entitled to qualified immunity on summary judgment.

13        The parties have **fourteen (14) days** from service of this Report and

14 Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 72(b);

15 *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for

16 purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above

17 time limit, the Clerk shall set this matter for consideration on May 23, 2025 as noted in

18 the caption.

19

20        Dated this 8th day of May, 2025.

21                                              _Theresa L. Fricke_

22                                    _____
                                              Theresa L. Fricke
23                                           Chief Magistrate Judge

24

25

REPORT AND RECOMMENDATION - 20